UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHELLIE L. JOHNSON,
ARCHIE JOHNSON, and
SHERMAN JOHNSON,

        Plaintiffs,

    v.                            Case No. 15-CV-173

CARRINGTON MORTGAGE SERVICES, LLC,

        Defendant.

ORDER

INTRODUCTION

According to plaintiff Shellie Johnson, for three years defendant Carrington Mortgage Services, LLC harassed her in an attempt to collect mortgage payments. Her phone rang incessantly and she received letters threatening foreclosure. On February 13, 2015, Johnson and her sons Archie and Sherman Johnson filed a lawsuit against Carrington alleging numerous violations of state and federal consumer protection laws. (ECF No. 1.) Three motions are pending, the most recent of which is the Johnsons' motion to file a third amended complaint. In accordance with 28 U.S.C. § 636(c) and

Fed. R. Civ. P. 73(b), the parties have all consented to the full jurisdiction of a magistrate judge. (ECF Nos. 2, 3, 4, 10.)

## BACKGROUND

The following facts are taken from the Third Amended Complaint and the attachments thereto. They are accepted as true for purposes of considering the sufficiency of the Third Amended Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2006 Shellie Johnson refinanced two mortgage loans, each of which were secured by separate real property in Milwaukee, Wisconsin. (ECF No. 18-3, ¶¶ 21-23.) On July 1, 2007, Carrington took over servicing the loans. (ECF No. 18-3, ¶ 26.) Carrington sent Johnson a letter to notify her that it was the new servicer and would be collecting her payments. (ECF No. 18-3, ¶ 27.) Six years later, around April 2013, Johnson requested to modify the notes' terms and conditions. (ECF No. 18-3, ¶ 28.) Carrington insisted that Johnson was late on her payments even though she was not. (ECF No. 18-3, ¶¶ 32, 34.) Carrington regularly called Johnson, sent her letters, and threatened to foreclose on the properties. (*See, e.g.*, ECF No. 18-3, ¶¶ 38, 57, 87.) Shellie Johnson and her sons Archie and Sherman Johnson were fed up with the harassing communications, and on February 13, 2015, proceeding pro se they filed a Complaint against Carrington in federal court. (ECF No. 1.)

Before Carrington responded to the Complaint, the Johnsons filed an Amended Complaint. (ECF No. 6.) Carrington moved to dismiss the Amended Complaint under

Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) The Johnsons moved to file a second amended complaint. (ECF No. 15.) Carrington opposed the second amendment as futile. (ECF No. 16.) In response, the Johnsons moved to file a third amended complaint. (ECF No. 18.) Carrington also opposed it as futile. (ECF No. 20.) Thus, three motions are pending: Carrington's motion to dismiss the amended complaint, the Johnsons' motion for leave to file a second amended complaint, and the Johnsons' motion for leave to file a third amended complaint.

## STANDARD

Within certain deadlines, a plaintiff is permitted to amend a complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1). A plaintiff who seeks to amend a complaint twice or more must receive leave from the court. *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 706 (7th Cir. 2015). Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a district court has broad discretion to deny leave to amend when, among other reasons, the amendment would be futile. *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

Amending a complaint is futile when it would not survive a dispositive motion. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015). Carrington argues that the Third Amended Complaint would be dismissed under Fed. R. Civ. P. 12(b)(6) for "fail[ing] to state a claim upon which relief may be granted." To avoid dismissal under Rule 12(b)(6), a complaint must contain allegations that "state a claim to relief that is

plausible on its face." *Iqbal*, 556 U.S. at 679-80 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the court will generally accept as true the allegations contained in the plaintiff's complaint, the court is not required to "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## ANALYSIS

It appears that each of plaintiffs' proposed amended complaints contains all of the factual allegations and claims of the complaints which precede it. Thus, a decision on the Johnsons' motion for leave to file a third amended complaint may decide the two motions which preceded it: Carrington's motion to dismiss the first amended complaint and the Johnsons' motion for leave to file a second amended complaint. If the Third Amended Complaint would not survive a motion to dismiss, neither would the Amended Complaint or the Second Amended Complaint.

The Third Amended Complaint contains nine claims. (ECF No. 18-3.) The Johnsons allege six claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p; one claim under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x; and two claims under Wisconsin law. Because the Johnsons are pro se

4

litigants, their complaints and briefs are entitled to a liberal construction. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014).

I. **Pro Se Signatures**

Although Carrington does not raise the issue, the court notes an initial problem with the Johnsons' motions. Archie and Sherman Johnson did not sign either the motion for leave to file a second amended complaint (ECF No. 15 at 2) or the motion for leave to file a third amended complaint (ECF No. 18 at 6). Only Shellie Johnson signed these motions. Under Federal Rule of Civil Procedure 11(a), "[e]very pleading, written motion, and other paper must be signed…by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a); *see also* 28 U.S.C. § 1654. Because the Johnsons are all proceeding pro se, Shellie Johnson may not sign motions on behalf of her sons. *Elustra v. Mineo*, 595 F.3d 699, 704 (7th Cir. 2010); *Abdul-Wadood v. Debruyn*, 89 F.3d 838, *1 (7th Cir. 1996) (unpublished); *see also Lenker v. Gray*, No. 2:07-CV-274-PRC, 2008 WL 4613534, at *4 (N.D. Ind. Oct. 10, 2008) Thus, the court cannot grant Archie or Sherman Johnson leave to file a second or a third amended complaint. And for the reason discussed below, it would be futile to give them another opportunity to correct their mistake.

II. **FDCPA**

The Johnsons' first six claims arise under the FDCPA. Congress enacted the FDCPA to promote the dissemination of truthful information and reduce abusive

5

Case 2:15-cv-00173-WED   Filed 10/13/15   Page 5 of 14   Document 22

methods of debt collection. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 643 (7th Cir. 2009). To state a claim under the FDCPA, the complaint must sufficiently allege that (1) the defendant is a "debt collector," (2) who attempted to collect a "debt" (3) in a manner that violated a provision of the FDCPA. *Bieber v. J. Peterman Legal Grp. Ltd.*, No. 14-CV-0666, 2015 WL 2340354, at *1 (E.D. Wis. May 15, 2015) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010)).

Carrington argues that the FDCPA claims must be dismissed with regard to Archie and Sherman Johnson because the Third Amended Complaint fails to allege they owed a "debt." It also argues that the claims should be dismissed as to all of the Johnsons because they fail to allege that the loans were primarily used for personal purposes and that Carrington is a debt collector. (ECF No. 20 at 3-9.)

In response, the Johnsons argue only that Carrington is debt collector. (ECF No. 19 at 4-5.)

   A.   *Archie and Sherman Johnson*

The protections of the FDCPA extend only to a "consumer" who is "obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Generally, it does not cover third parties. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943 (7th Cir. 2011). Nothing in the any of the complaints or their attachments suggest that Archie or Sherman Johnson is obligated to repay the mortgage debts. Nor do the Johnsons now claim that Archie and Sherman Johnson have standing to sue Carrington. When a

6

plaintiff fails to respond to an argument that a claim is deficient, he waives any potential argument and effectively abandons the claim. *Alito v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

Archie and Sherman Johnsons' claims under the FDCPA must be dismissed.

B. *Primary Purpose of the Debts*

"Debt" is defined in the FDCPA as an obligation to pay money that was obtained for "personal, family, or household purposes…." 15 U.S.C. 1692a(5). Congress intentionally excluded from this definition debts arising out of commercial transactions. S. Rep. No. 95-382, at 3 (1977) (noting that the FDCPA "has no application to the collection of commercial accounts"). Carrington argues that the Third Amended Complaint does not allege that Shellie Johnson used the two mortgaged properties primarily for a personal purpose. (ECF No. 20 at 8-9.) For instance, a debt securing rental property falls outside of the FDCPA's purview. *Miller v. McCalla, et al.*, 214 F.3d 872, 875 (7th Cir. 2000).

In reviewing the Third Amended Complaint and its attachments, the court finds no mention of how Shellie Johnson intended to use the properties, let alone factual allegations to support such an assertion. Nor do the Johnsons articulate in their brief a purpose for the properties secured by the mortgages. Moreover, there is reason to suspect that the properties are *not* used for personal purposes. Shellie Johnson mortgaged both properties around the same time (ECF No. 18-4 at 4-5) and in the same

city as her mailing address in Milwaukee, Wisconsin, which is a different address than the addresses of the properties on the mortgages. (ECF No. 18-4 at 12). Independent of that observation, the Third Amended Complaint fails to plead facts establishing that the mortgages were debts as defined under 15 U.S.C. 1692a(5).

Therefore, the FDCPA claims must be dismissed.

C.   *Debt Collector*

Carrington also argues that it is not a "debt collector" as defined under the FDCPA. (ECF No. 20 at 4-8.) The term debt collector includes any person who conducts business with the principal purpose of collecting debts. 15 U.S.C. 1692a(6). But the definition has several exceptions. Relevant here, the term debt collector excludes any person collecting "a debt…which was not in default at the time it was obtained…." 15 U.S.C. 1692a(6)(F)(iii). Carrington maintains that Shellie Johnson was not in default when Carrington began servicing her loans on July 1, 2007. (ECF No. 20 at 4-7.) To establish this timeline, Carrington submitted an employee's affidavit and a record of Shellie Johnson's payments from 2007. (ECF No. 17.)

In the context of a motion to dismiss, a court may review only the complaint and its attachments. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555-56 (7th Cir. 2012). To consider materials outside of the pleadings, a district court ordinarily must convert the motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(d). One consequence of that conversion is that the court must provide the parties with a

reasonable opportunity to submit additional materials pertinent to the motion. Fed. R. Civ. P. 12(d). Given that the FDCPA claims fail for the reason discussed above, it is unnecessary to further consider Carrington's claim that it is not a debt collector under 15 U.S.C. 1692a(6)(F)(iii).

**III.    FCRA**

Shellie Johnson alleges that Carrington violated the FCRA by "report[ing] inaccurate information to the Credit Reporting Agencies that [she] has been delinquent for months…."[1] (ECF No. 18-3, ¶ 143.) Carrington submits that, even if this were true, reporting inaccurate information to a credit reporting agency does not by itself provide Shellie Johnson with a private right of action under the FCRA. (ECF No. 20 at 10-11.) Shellie Johnson does not respond to this argument.

Although the Third Amended Complaint does not state which provision of the FCRA Carrington allegedly violated, it appears that the claim arises under 15 U.S.C. § 1681s-2, which applies to furnishers of credit information. Under that statute, furnishers have a duty to provide credit reporting agencies with accurate information about their consumers. 15 U.S.C. § 1681s-2(a). Consumers may contest inaccurate information on their credit report with a credit reporting agency. If a credit reporting agency discovers that there is a genuine dispute over the "completeness or accuracy" of a consumer's information, it will notify the furnisher that a dispute exists relating to

---

[1] Although not stated in the Third Amended Complaint, the Johnsons' brief says that only Shellie Johnson is raising a claim under the FCRA. (ECF No. 19 at 3.)

information the furnisher provided. 15 U.S.C. § 1681s-2(b)(1). The furnisher must then conduct an investigation and take measures to correct any mistake. 15 U.S.C. § 1681s-2(b)(1); *see also Westra v. Credit Control*, 409 F.3d 825, 827 (7th Cir. 2005).

There is no private cause of action against a furnisher who initially provides inaccurate information to a credit reporting agency; only a federal entity may enforce the furnisher's breach of its duty. 15 U.S.C. 1681s-2(d); *see also Perry v. First Nat. Bank*, 459 F.3d 816 (7th Cir. 2006). Nor does a consumer have a cause of action if the consumer rather than a credit reporting agency notifies the furnisher of the disputed information. *McAdams v. Wheaton Franciscan Med. Grp.*, No. 13-C-0899, 2014 WL 2589963, at *3 (E.D. Wis. June 10, 2014) (citing *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 615–16 (6th Cir. 2012)). A private right of action arises only after the furnisher receives notice from a credit reporting agency and fails to investigate the problem or otherwise act in accordance with 15 U.S.C. 1681s-2(b). *Id.*

Accordingly, a claim under the FCRA must allege at least that the plaintiff disputed the inaccurate credit report with a credit reporting agency. *Lang v. TCF Nat. Bank*, 249 F. App'x 464, 466-67 (7th Cir. 2007). The Third Amended Complaint alleges only that Carrington "reported inaccurate information" (ECF No. 18-3, ¶ 143), not that Shellie Johnson contacted a credit reporting agency about it or that Carrington failed to investigate the problem and correct any inaccurate information. Carrington noted this shortcoming in its opposition to the Second Amended Complaint (ECF No. 16-2 at 6-7),

and yet Johnson's proposed Third Amended Complaint still does not contain the required allegations.

Shellie Johnson's claim under the FCRA must be dismissed.

## IV. State Law Claims

Finally, the Johnsons' remaining claims, for an intentional tort and a violation of the Wisconsin Consumer Act, arise under Wisconsin law. (ECF No. 18-3 at 36-37.) The Johnsons correctly state that jurisdiction over their FDCPA and FCRA claims was based on the federal question statute, 28 U.S.C. § 1331, which gives the district court original jurisdiction over all cases "arising under the Constitution, laws, or treaties of the United States." Jurisdiction over the state-law claims, on the other hand, is based on supplemental jurisdiction—*i.e.*, their close relation to the federal-law claims. 28 U.S.C. § 1367(a). Because the court has concluded that the Johnsons' claims under the FDCPA and FCRA must be dismissed, no federal claims remain. And the Third Amended Complaint does not suggest that the court has diversity jurisdiction under 28 U.S.C. § 1332. Thus, the issue is whether the court should continue to exercise supplemental jurisdiction over the state-law claims.

When all of the federal law claims drop out of a complaint, a district court ordinarily should relinquish jurisdiction over state-law claims. *See* 28 U.S.C. §1367(c)(3); *see also Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009). This general rule may be overcome when factors such as "the values of judicial

11

economy, convenience, fairness, and comity" favor exercising supplemental jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). The district court's decision to exercise supplemental jurisdiction is a highly discretionary one. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998) (characterizing "district court discretion to relinquish pendent jurisdiction as 'almost unreviewable'").

The relevant factors favor Wisconsin courts resolving the Johnsons' state-law claims. For starters, this action is still early in its life cycle. Because of the preliminary motions, the court has not even conducted a scheduling conference. So a state court proceeding will not result in duplication of effort. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). In addition, Carrington argues that the Johnsons' intentional tort claim is barred by Wisconsin's economic loss doctrine. (ECF No. 14 at 8-10.) The economic loss doctrine is an intricate facet of Wisconsin law, *see, e.g., Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 989 (7th Cir. 2005), which does not clearly "knock out" the Johnsons' state-law claim, *see Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir. 1997). In the interest of comity, Wisconsin courts should resolve complex matters of state law. *Id.* The court declines to exercise supplemental jurisdiction over the state law claims.

12
Case 2:15-cv-00173-WED   Filed 10/13/15   Page 12 of 14   Document 22

## CONCLUSION

When a motion to dismiss is granted, the general rule is for the court to grant the plaintiff an opportunity to amend the complaint's deficiencies. *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). However, a court may deny leave to a plaintiff who has repeatedly failed to cure a complaint's deficiencies. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Douglas v. Clark*, 993 F.2d 1549, \*2 (7th Cir. 1993) (unpublished); *Wicke v. L & C Insulation, Inc.*, No. 12-CV-638-WMC, 2013 WL 5570323, at \*2 (W.D. Wis. Oct. 9, 2013). The Johnsons filed a Complaint, an Amended Complaint, a proposed Second Amended Complaint, and a proposed Third Amended Complaint. All of them failed to sufficiently allege a claim arising under federal law. The court will not afford the Johnsons yet another opportunity to correct the deficiencies in the complaints.

Without these federal claims, the court declines to exercise supplemental jurisdiction over the state law claims.

**IT IS THEREFORE ORDERED** that the defendant's Motion to Dismiss (ECF No. 11) is **denied** as moot.

**IT IS FURTHER ORDERED** that the defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 13) is **granted**.

**IT IS FURTHER ORDERED** that the plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 15) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiffs' Motion Opposing Defendant's Motion to Dismiss and Leave to File Third Amended Complaint (ECF No. 18) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiffs' complaint and this action are **dismissed** with prejudice.

The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of October, 2015.

WILLIAM E. DUFFIN
U.S. Magistrate Judge